IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONIA WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-08-2413 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Plaintiff Tonia White sues on behalf of her son, Terreth Allen White, who was an inmate at the Estelle Unit of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID). White, proceeding with the assistance of counsel, sues Brad Livingston, the Director of the TDCJ; Alfonso Castillo, the Warden of the Estelle Unit; TDCJ-CID; Mary Thornton and Joann Beasley, nurses at the Estelle Unit; and John and/or Jane Doe ##1-5, guards at the Estelle Unit. Tonia White alleges that prison guards used excessive force against her son on August 2, 2006 and that the guards and other prison officials denied him medical care after the assault. White also alleges that her son, who had epilepsy, was denied seizure medication. He had a seizure on August 3, 2006. Tonia White alleges that the defendants again denied him medical care. Terreth White died on August 5, 2006. Tonia White alleges that the defendants' deliberate indifference caused her son's death. Tonia White filed this suit on August 4, 2008, asserting claims under 42 U.S.C. § 1983 for excessive force and denial of medical care, and under the Texas Tort Claims Act.

On October 15, 2008, this court ordered service. (Docket Entry No. 2). Livingston, Castillo, the TDCJ-CID, Thornton, and Beasley have filed motions to dismiss, (Docket Entry No. 5, 6, and

15).  White has responded, (Docket Entry No. 9, 10, and 16).  Livingston, Castillo, the TDCJ-CID, and Thornton filed surreplies.  (Docket Entry No. 11 and 14).

Based on the pleadings; the motions, responses, and the surreplies; the record; and the applicable law, this court grants in part and denies in part the motion to dismiss filed by Livingston, Castillo, and TDCJ, and denies the motions to dismiss filed by Thornton and Beasley.  This case is transferred to the docket of the judge presiding over the earlier-filed case filed by Terreth White's grandmother.  The reasons for these rulings are stated in detail below.

**I.     The Allegations in the Complaint**

On August 5, 2006, Terreth White died while in custody at the Estelle Unit.  In the complaint, filed on August 4, 2008, his mother, Tonia White, alleged that on August 2, 2006, guards working at the Estelle Unit – John and Jane Does Nos. 1 through 5 – physically beat Terreth White.  The allegations state that he was repeatedly struck in the head and other parts of his body by prison guards while handcuffed in his cell, and that he was hit with a face shield and that his head hit an iron bed during the beating.  He was not taken to the infirmary.

The complaint alleges that on August 4, 2006, Terreth White was observed in his cell, handcuffed, lying on the floor naked and motionless.  A check revealed that White had multiple lacerations and contusions to his head and lacerations inside his mouth and to his lips.  The complaint alleges that nurses Thornton and Beasley only documented that Terreth White had an "injury to his face," but that he could not speak and was "observed only to twitch" and to have dried blood around his nose and mouth.  Thornton and Beasley allegedly provided no medical treatment.  Although Terreth White had a history of seizures, which was known, no medication was administered.  Tonia White alleges that no guard informed medical personnel of the fact that Terreth

White had been assaulted and had hurt his head. The complaint alleges that the defendants ignored White's medical needs.

A week before his death, Terreth White allegedly complained to his grandmother, Ethell Terrell, that he was not receiving his medications. Tonia White alleges that the defendants failed to document the request for medication and/or fraudulently documented refusals of medication before Terreth White's death.

On August 3, 2006, Terreth White had a seizure, which was allegedly seen by Thornton, Beasley, and the Doe defendants. No medications were administered.

On August 5, 2006, Terreth White died. On August 8, 2006, an autopsy was performed by the County of Galveston Medical Examiner's Office. Possible causes of death were a "myocardial bridge" and possible seizure disorder. No seizure medication was found in the body. The autopsy showed "sustained multiple superficial ecchymoses," "abrasions and lacerations of multiple ages," and a laceration to the lower lip. Blood was recovered from the right side of the head, consistent with bruising. Tonia White alleges that but for the assault and/or the failure to administer medication, the death would not have occurred.

Tonia White alleges that Livingston and Castillo had policies or practices that included inadequate supervision of prison officers and caused Terreth White's death. She also alleges that "defendant" has manifested a history of "neglecting the medical care and treatment of those placed in its custody."

White seeks the following relief:

1.   a judgment declaring that the acts and practices complained of violate the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and § 1983;

      2.      compensatory damages;

      3.      prejudgment and postjudgment interest; and

      4.      costs and fees.

The defendants have moved to dismiss on the basis that limitations bar the claims; that Tonia White lacks standing; and immunity. Each motion is addressed below.

**II.    The Standard of Review**

In considering a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999)). To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, ___ S. Ct. ____, No. 07-1015, 2009 WL 1361536 (May 18, 2009). While the plaintiff's complaint need not contain "detailed factual allegations, [its] obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." 127 S. Ct. at 1964-65 (quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (quotations, citations, and footnote omitted). The complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.

A court generally must limit itself to the contents of the pleadings in considering a Rule 12(b)(6) motion but may consult documents attached to the defendant's motion if "they are referred

to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## III.     Limitations

Thornton and Beasley move for dismissal based on the statute of limitations. (Docket Entry No. 6, 15). Thornton and Beasley were employed by UTMB-CMC as licensed vocational nurses. Both argue that their alleged constitutional violations – denying seizure medications on August 3, 2006 and failing to provide treatment or medication on August 4, 2006 – occurred more than two years before suit was filed on August 4, 2008. Beasley points out that the complaint alleges failures to administer the appropriate seizure medications beginning a week before Terreth White's death. Beasley argues that the two-year statute of limitations expired on July 29, 2008, when the failures to respond to requests for medication allegedly first occurred.

In their motion to dismiss, Livingston, Castillo, and the TDCJ-CID state that they will assert the statute of limitations as an affirmative defense at the next stage of this litigation. (Docket Entry No. 5, p. 1, n.1).

Because Congress has not provided a statute of limitations for civil rights actions under § 1983, federal courts adopt the forum state's general personal injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995). Survival and wrongful death actions may be brought under § 1983. *See Moor v. County of Alameda*, 411 U.S. 693, 702-03 n.14 (1973) ("[P]ursuant to § 1988 state survivorship statutes which reverse the common-law rule may be used in the context of actions brought under § 1983."); *Brazier v. Cherry*, 293 F.2d 401, 406-07 (5th Cir. 1961) (incorporating both a state's survival statute and its

wrongful death statute to provide full remedies for § 1983 violations). Survival and wrongful death actions are derivative causes of action. *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992). "[I]f a decedent's action would have been barred by limitations had it been asserted immediately prior to his death, a survival action based on the same alleged wrong is likewise barred." *Id.* at 345. And if a decedent could not maintain a personal injury suit at his death because it was barred by some defense such as limitations, "then there is no wrongful death action to accrue." *Id.* at 348-49; TEX. CIV. PRAC. & REM. CODE ANN. § 71.003(a) (Vernon Supp. 2004-05).

In Texas, the general personal injury limitations period is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986); *Piotrowski*, 51 F.3d at 514 n.5; *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). Texas law also provides that the death of a person who may bring a cause of action suspends the statute of limitations for one year. TEX. CIV. PRAC. & REM. CODE ANN. § 16.062 (Vernon 2008). In § 1983 actions, the Fifth Circuit applies state tolling provisions to determine whether the limitations period has expired. *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993).

Terreth White died on August 5, 2006. The statute of limitations ended no earlier than August 5, 2008. White filed her original complaint on August 4, 2008. The allegations that some acts contributing to the death occurred a few days earlier do not make this suit untimely. The motions to dismiss filed by Thornton and Beasley based on limitations, (Docket Entry Nos. 6 & 15), are denied.

**IV.    Standing**

Beasley moves to dismiss on the ground that Tonia White lacks standing to sue. (Docket Entry No. 15). White responds that "[a]lthough the Defendant asserts that White has not plead

sufficient facts to establish standing under the Texas Survival Statute, White clearly has asserted that she has standing as the surviving parent to bring suit under the Texas Wrongful Death statute." (Docket Entry No. 16, p. 3).

Survival actions under § 1983 are governed by 42 U.S.C. § 1988, which directs the courts to look to the law of the forum state. *Robertson v. Wegmann*, 436 U.S. 584 (1978). The Fifth Circuit has consistently borrowed from the Texas survival and wrongful death statutes in determining who has standing to bring such claims under § 1983. *See Pluet v. Frasier,* 355 F.3d 381, 383 (5th Cir. 2004) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suit."); *Aguillard v. McGowen*, 207 F.3d 226 (5th Cir. 2000). This court looks to Texas state law to determine whether Tonia White has standing to assert a wrongful death or survival claim under 42 U.S.C. § 1983. *Id.; Aguillard v. McGowen,* 207 F.3d 226, 231 (5th Cir. 2000).

A survival claim belongs to the decedent because it arises from injuries sustained while the decedent was alive. *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 849-50 (Tex. 2005). A survival action "preserves a claim for the estate rather than creating a new cause of action for those surviving the decedent." *Pluet,* 355 F.3d at 384; *see also Austin Nursing Center, Inc. v. Lovato,* 171 S.W.3d 845, 849-50 (Tex. 2005). Section 71.021 provides that "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 (Vernon Supp. 2009). Generally, "only the estate's personal representative has the capacity to bring a survival claim." *Austin Nursing Center,* 171 S.W.3d at 850 (citing *Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex. 1971)).

White does not contend that she is the legal representative of her deceased son's estate. She is an heir, but an heir may sue on behalf of the estate only under certain circumstances. *Id.* Heirs at law may maintain a survival suit "during the four-year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending and none [is] necessary." *Austin Nursing Center,* 171 S.W.3d at 850-51 (citing *Shepherd,* 962 S.W.2d at 31-32). White has not pleaded that administration of Terreth White's estate is not pending or that none is necessary. White lacks standing as an heir of her deceased son's estate to bring a claim under the Texas Survival Statute.

A wrongful death claim belongs to the statutory beneficiaries and does not benefit the estate. *Sowell v. Dresser Ind.*, 866 S.W.2d 803, 807 (Tex. App.-Beaumont 1993, writ denied). The decedent's spouse, children, and parents may bring a wrongful death action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.004 (Vernon Supp. 2009); *Shepherd v. Ledford,* 962 S.W.2d 28, 3l (Tex. 1998). Wrongful death benefits in Texas do not belong to the decedent's estate. *Brown v. Edwards Transfer Co., Inc.,* 764 S.W.2d 220, 223 (Tex. 1988).

Tonia White is Terreth White's mother. She has standing to bring an action for her son's wrongful death. *See Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992) (the mother of a pretrial detainee who committed suicide had standing to file a wrongful death suit against the county under § 1983 and state law); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir.), *cert. denied*, 82 S. Ct. 243 (1961); *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 172 (5th Cir. 1985), *cert. denied*, 107 S. Ct. 1369 (1987).

White does have standing to bring a wrongful death action. Beasley's motion to dismiss for lack of standing, (Docket Entry No. 15), is denied.

## V.     Eleventh Amendment Immunity

### A.     The Claims Against Livingston and Castillo in Their Official Capacities

Livingston and Castillo argue that the claims against them in their official capacities are barred by the Eleventh Amendment. (Docket Entry No. 5, pp. 3-4). An Eleventh Amendment sovereign immunity defense challenges a court's subject-matter jurisdiction. *See Ussery v. Louisiana*, 150 F.3d 431, 434 (5th Cir. 1998). A federal court does not have subject-matter jurisdiction to hear claims that are barred by the Eleventh Amendment.

"The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents." *Daigle v. Gulf State Utilities Company, Local Union Number 2286, et al.*, 794 F.2d 974, 980 (5th Cir. 1986). Eleventh Amendment immunity extends to suits for monetary damages against state officials in their official capacity. *See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 609 n.10 (2001) (recognizing that "States and state officers acting in their official capacity are immune from suits for damages . . ."). Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). The Eleventh Amendment immunity extends to TDCJ officers acting in their official capacities. *Aguilar*, 160 F.3d at 1054.

There are exceptions to Eleventh Amendment immunity. Congress can abrogate Eleventh Amendment immunity without a state's consent when acting under its authority under the enforcement provisions under § 5 of the Fourteenth Amendment. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985). A state "may waive its sovereign immunity by consenting to suit." *College Savings Bank v. Florida*

*Prepaid Postsecondary Education Expense Board, et al.*, 527 U.S. 666, 670 (1999). Waiver is present if the state voluntarily invokes federal-court jurisdiction or makes a clear declaration that it intends to submit itself to federal-court jurisdiction. *Meyers*, 410 F.3d at 241.

The third exception exists for suits seeking prospective injunctive relief against state employees in their official capacities. *Ex parte Young*, 209 U.S. 123 (1908). This exception applies if a suit alleging violations of federal law is "brought against individual persons in their official capacities as agents of the state, and the relief sought [is] declaratory or injunctive in nature and prospective in effect." *Aguilar v. Texas Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *see also Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988) ("The Eleventh Amendment and the doctrine of *Ex parte Young* together create a relatively simple rule of state immunity. Basically, prospective injunctive or declaratory relief against a state is permitted – whatever its financial side-effects – but retrospective relief in the form of a money judgment in compensation for past wrongs – no matter how small – is barred.").

White's claims against prison officials in their official capacity are treated as claims against the State of Texas which, absent an exception to immunity, are barred by the Eleventh Amendment. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004). The first two exceptions to Eleventh Amendment immunity do not apply. Congress has not abrogated the states' sovereign immunity for claims under 42 U.S.C. § 1983. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Colony*, 538 U.S. 701 (2003); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (per curiam). The State of Texas has not consented to this suit. The Texas Tort Claims Act does not waive Eleventh Amendment immunity from suit in federal court. *Sherwinski v. Peterson,* 98 F.3d 849, 852 (5th Cir. 1996).

The third exception to immunity might apply because White seeks a declaratory judgment that the acts and practices she alleges violate the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and § 1983.  (Docket Entry No. 1, Complaint, p. 9).  But White has no standing to bring such a claim for declaratory relief.  Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const. Art. III § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  "To pursue an injunction or a declaratory judgment, the [plaintiffs] must allege a likelihood of future violations of their rights by [the defendant], not simply future effects from past violations."  *Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (citing *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994)).  When a plaintiff "allege[s] only a single, past statutory violation and does not assert any likelihood that he will be subjected to a similar violation in the future," he does not have standing to seek the prospective relief allowed under *Ex parte Young*.  *See Armstrong*, 141 F.3d at 563; *see also Davis v. Tarrant County, Tex.*, 565 F.3d 214, 2009 WL 931169, *11 (5th Cir. Apr. 8, 2009).

White alleges excessive force and denial of medical care that led to the death of her son in prison.  White does not assert any likelihood that her rights will be similarly violated in the future.  She does not have standing to seek the prospective relief allowed under *Ex parte Young*.

White's claims for money damages against Livingston and Castillo in their official capacities are barred by the Eleventh Amendment.  Though her claim for declaratory judgment under § 1983 is cognizable under *Ex parte Young* as a claim for prospective relief, she does not have standing to seek such relief.  The official capacity claims against Livingston and Castillo are dismissed.

### B.     The Claims Against the TDCJ-CID

Under the Eleventh Amendment, federal courts lack jurisdiction to entertain suits against a state agency. *Thornton v. Merchant*, 2009 WL 2029871 (5th Cir. 2009) (citing *In re Soileau,* 488 F.3d 302, 305 (5th Cir. 2007), *cert. denied,* 128 S. Ct. 1220 (2008)). "[A]s an instrumentality of the state, TDCJ-ID is immune from [ ] suit on Eleventh Amendment grounds." *Aguilar v. Tex. Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998); *Harris v. Angelina County, Tex.,* 31 F.3d 331, 338 n.7 (5th Cir. 1994). The Eleventh Amendment also bars state-law claims asserted in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 120-21 (1984). The Eleventh Amendment bars White's state and federal claims against the TDCJ. Those claims are dismissed.

## VI.    The Claims Against Livingston and Castillo in Their Individual Capacities

Tonia White sued Livingston and Castillo individually. (Docket Entry No. 10, pp. 3-4). She alleges failures to properly carry out the responsibilities of prohibiting the use of excessive force; training and supervising officers; hiring officers with no known propensity for misconduct, including the use excessive force; and investigating inmate complaints. Tonia White alleges that Castillo and Livingston had a "custom, policy, practice, and procedure" of allowing the acts that resulted in Terreth White's death. In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). "For an official to act with deliberate indifference, the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 912 (internal quotation omitted). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation omitted).

In this case, there is no allegation that Livingston and Castillo were personally involved in the assault or the failure to provide medical care. White relies on a failure-to-train-and-supervise theory of liability. White has alleged that Livingston and Castillo failed properly to hire, train, or supervise the guards; that the guards likely had previous incidents of excessive force; that there is a causal connection between the failure to supervise or train and the violation of Terreth White's rights; and that the failure to supervise or train amounted to deliberate indifference to those rights. White's allegations are sufficient to state a claim against Livingston and Castillo in their individual capacities. Their motion to dismiss is denied.

## VII.    Conclusion

The motion to dismiss filed by Livingston, Castillo, and the TDCJ, (Docket Entry No. 5), is granted in part and denied in part. The motions to dismiss filed by Thornton and Beasley, (Docket Entry Nos. 6 & 15), are denied. White's claims against the TDCJ are dismissed. Any remaining pending motions are denied as moot.

The court notes that on July 30, 2008, Terreth White's paternal grandmother, Bernice Boyd, filed a separate lawsuit under 42 U.S.C. § 1983. *Boyd v. Grooms*, Civil Action Number 4:08-2371. Various prison officials, including some of the same individuals named in this suit, have filed motions to dismiss based on lack of jurisdiction and limitations. Boyd has responded. Boyd

provided documentation on January 19, 2009 that she had been appointed permanent administrator of Terreth White's estate by Probate Court No. 1 of Harris County, Texas (in Cause Number 383741). On August 26, 2009, the federal court ordered Boyd to provide evidence that the probate court had approved her proceeding with her federal lawsuit. Boyd was ordered to submit evidence of the probate court's approval by September 14, 2009.

Rule 42 of the Federal Rules of Civil Procedure provides, "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." This case is transferred to the judge handling the lower-number suit, to be considered for consolidation or coordination.

SIGNED on September 3, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge